OPINION
{¶ 1} Defendant-appellant Chef's Classics, Inc. appeals from the Mahoning County Common Pleas Court's grant of summary judgment for plaintiff-appellee Cleveland Mack Leasing, LTD. Two issues are raised in this appeal. The first issue is whether there was a genuine issue of material fact as to the amount of damages. The second issue is whether the terms in the lease allowing for the lessor to collect both the amount of the default in the lease payments and the purchase price of the vehicle results in excessive damages. For the reasons stated below, the judgment of the trial court is affirmed in part, reversed in part and remanded.
 STATEMENT OF FACTS AND CASE {¶ 2} Chef's Classics is a catering business. Cleveland Mack Leasing leases vehicles to businesses. On August 15, 1997, Chef's Classics and Cleveland Mack Leasing entered into a written lease agreement. Pursuant to that agreement, Chef's Classics leased three vehicles from Cleveland Mack Leasing. The three vehicles leased were a 1998 Isuzu Truck, a 1999 Isuzu Truck, and a 1998 Mack truck.
 {¶ 3} Sometime in 2002, Chef's Classic began having financial difficulties. As a result, it breached the lease agreement by failing to make the agreed upon lease payments. Chef's Classics went out of business in June 2002. It returned all three vehicles to Cleveland Mack Leasing at that time.
 {¶ 4} On October 4, 2002, Cleveland Mack Leasing filed the instant action. It claimed that Chef's Classics owed it $28,547.36 for delinquent lease payments. It also claimed that it had invoked its right under the lease to collect the purchase price of two of the subject lease vehicles. Thus, it claimed that it was entitled to $20,971 for one of the vehicles and $20,416 for the other vehicle. Accordingly, it requested judgment in the amount of $69,934.36.
 {¶ 5} Chef's Classics filed an answer to the above complaint raising various defenses. One of the defenses was that improvements were made to the Mack truck by the addition of a 20-foot Kidron body and Thermo-King refrigeration unit. According to Chef's Classics, those additions enhanced the value of the Mack truck and, thus, should be used to offset a portion of the delinquent lease payments.
 {¶ 6} Discovery then occurred. During discovery, Chef's Classics admitted that it owed approximately $23,000 in deficient lease payments. Cleveland Mack Leasing then filed a motion for summary judgment. Chef's Classics filed a motion in opposition to the motion for summary judgment. The trial court granted the motion and awarded damages in the amount of $69,934.35. Chef's Classics timely appeals from that decision.
 STANDARD OF REVIEW {¶ 7} In reviewing an award of summary judgment, appellate courts must apply a de novo standard of review. Cole v. AmericanIndustries Resources Corp. (1998), 128 Ohio App.3d 546, 552. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. State ex rel. Parsonsv. Fleming, 68 Ohio St.3d 509, 511, 1994-Ohio-172.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 8} "THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 9} Chef's Classics argues two points under this assignment of error. First, it contends that the attachments to the summary judgment motion do not show that Chef's Classics owes Cleveland Mack Leasing $28,547.36 for delinquent lease payments. Secondly, it argues that the additions to the Mack truck entitled it to a credit or an offset on the delinquent lease payments. It reasoned that the addition of the 20-foot Kidron body along with the Thermo-King refrigeration unit improved the truck and would benefit Cleveland Mack Leasing.
 {¶ 10} Regarding the first argument, attached to Cleveland Mack Leasing's motion for summary judgment is an affidavit from David Klein. He attests that he is employed by Cleveland Mack Leasing and has personal knowledge of the lease agreement. He claims that Chef's Classics owed Cleveland Mack Leasing $28,547.36 plus service charges. (Klein Aff. ¶ 4). He claims that attached to the affidavit is an accounting which "includes true and correct reproductions of the unpaid invoices owed by Chef's Classics, Inc. to Cleveland Mack." (Klein Aff. ¶ 4).
 {¶ 11} Attached to the affidavits are unpaid invoices. When the numbers of these invoices are added together, it appears that Chef's Classics owes Cleveland Mack Leasing $29,654.80. This number does not correspond with the $28,547.36 that Klein attested was owed to Cleveland Mack Leasing. Furthermore, none of the filings in this case or the trial court's order indicates why the $28,547.36 number was chosen instead of the $29,654.80 number. Thus, we find that there is an issue as to what the appropriate amount of damages would be.
 {¶ 12} That said, we must emphasize that while an issue exists as to the amount of damages owed to Cleveland Mack Leasing, there is no issue as to liability. Chef's Classics admitted in the interrogatories that it owed Cleveland Mack Leasing approximately $23,000. Furthermore, Chef's Classics motion in opposition to summary judgment created no genuine issue of material fact concerning its liability to Cleveland Mack Leasing on the delinquent lease payments. The only argument made by Chef's Classics in the motion in opposition to summary judgment was that the amount of delinquent lease payments stated in Klein's affidavit did not correspond to the amount shown on the invoices that were attached thereto. Thus, while an issue exists as to the exact amount Chef's Classics owes Cleveland Mack Leasing for delinquent lease payments, no issue exists as to the fact that Chef's Classics owes Cleveland Mack Leasing at least $23,000 for delinquent lease payments. The first issue under this first assignment of error has some merit.
 {¶ 13} The second issue raised in this assignment of error is whether the trial court erred when it did not consider the alleged improvements to the Mack truck when it computed the delinquent lease payments. Attached to Cleveland Mack Leasing's motion for summary judgment is the August 15, 1997 contract. In the third paragraph of the first provision of this contract it states:
 {¶ 14} "Lessee [Chef's Classics] shall not make any changes, alteration, addition, or modification to the property without the prior written consent of Lessor [Cleveland Mack Leasing]. Such action by Lessee shall be deemed a material breach of this Lease Agreement."
 {¶ 15} Furthermore, paragraph two of provision 26 states:
 {¶ 16} "This Lease Agreement may not be modified, altered, or amended except by written instrument duly executed by both parties."
 {¶ 17} The record contains no written instrument authorizing Chef's Classics to modify the Mack truck. Also, nothing in the record even remotely suggests that Chef's Classics had Cleveland Mack Leasing's permission to make the additions it made to the Mack Truck. Likewise, there is no written instrument or any evidence in the record that Chef's Classics and Cleveland Mack Leasing had an agreement that any improvements made by Chef's Classics to the Mack Truck would be used to offset due lease payments.
 {¶ 18} Chef's Classics argues that when it returned the truck it advised an employee of Cleveland Mack Leasing that it was returning the vehicle with the addition to receive an offset. It claims that since the truck was accepted as it was, Cleveland Mack Leasing agreed to those terms.
 {¶ 19} While it may be true that Chef's Classics told a Cleveland Mack Leasing representative that the addition was to be used as an offset and that Cleveland Mack Leasing accepted the return of the vehicle with the addition, those actions do not modify the contract. A contract is defined by the words written within the four corners of the document. The contract unambiguously states that the only way to modify the contract is through a written instrument. As stated above, there is no written instrument in the record that purports to change the terms of the lease agreement. Accordingly, the actions of Cleveland Mack Leasing and Chef's Classics cannot constitute a modification of the terms of the lease.
 {¶ 20} Consequently, since nothing in the record indicates that improvements would be used as an offset, there is no genuine issue of material fact. The trial court did not err in refusing to consider these additions for an offset of lease payments. Accordingly, any argument to the contrary lacks merit.
 {¶ 21} In conclusion, this assignment of error is sustained in part and overruled in part. Concerning the amount awarded to Cleveland Mack Leasing for delinquent lease payments, this assignment is sustained due to the fact that the affidavit and invoices that were attached to the motion for summary judgment did not correspond with each other and no other evidence indicated what the correct amount of damages was for the delinquent lease payments. However, the argument that the trial court erred when it did not offset the delinquent lease payments by the modifications made to the Mack truck is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 22} "THE JUDGMENT FOR DAMAGES RENDERED BY THE TRIAL COURT WAS EXCESSIVE AND CONTRARY TO LAW."
 {¶ 23} Under this assignment of error, Chef's Classics argues that the contract does not provide that Cleveland Mack Leasing could collect both the delinquent lease payments and require purchase of the vehicle. It also contends that a provision allowing for both payment of delinquent lease payments and forced purchase would amount to unjust enrichment. Lastly, it argues that the trial court's award of damages was excessive and the provisions in the lease that allow for the collection of both the delinquent lease payments and the price of the vehicle are unconscionable.
 {¶ 24} The lease provides as follows:
 {¶ 25} "20. TERMINATION. * * *
 {¶ 26} "If Lessee's breach or default of this Lease Agreement shall continue for seven (7) days or more after Lessor shall have sent written notice thereof to Lessee, Lessor, at its option, may terminate this Lease Agreement, and Lessor, at its option, may demand that Lessee purchase the Property in accordance with Paragraph 22 below. In the event that Lessor shall be required to resort to legal process in order to take possession of the Property or otherwise enforce its rights hereunder, including the collection of amounts due from Lessee, Lessee shall be liable to Lessor for the costs thereof, including reasonable attorney's fees.
 {¶ 27} "* * *
 {¶ 28} "22. TERMINATION PURCHASE. If Lessee is required to purchase any Property or if lessor demands Lessee purchase any Property as set forth in Paragraph 20 above, Lessee agrees to purchase the Property for the Original Value shown on Schedule A less the Accumulated Depreciation Amount, which is the monthly depreciation credit multiplied by the number of months between the date in service shown on Schedule A and the termination date. * * * Lessee is responsible for payment of all monthly lease charges prior to termination. Title will not be transferred until all charges are paid."
 {¶ 29} Chef's Classics' belief that the contract does not provide for collecting both the delinquent lease payments and requiring purchase of the vehicle arises from provision 20. In this provision, as is quoted above, Cleveland Mack Leasing is given the option of requiring Chef's Classics to purchase the vehicle. Then, in the next sentence, it states that if Cleveland Mack Leasing has to resort to the legal process in order to take possession of the property or enforce its rights, Chef's Classics is liable to it for costs. Chef's Classics claims that the first sentence requiring payment of the value of the vehicle does not contemplate the return of the vehicles.
 {¶ 30} This interpretation is not correct. The lease clearly provides that Cleveland Mack Leasing, in the situation presented, can require Chef's Classics to purchase the vehicle and pay its default. Evidence of this is the last two sentences in provision 22. It specifically states, after discussing the forced purchase option, that "Lessee [Chef's Classics] is responsible for all monthly lease charges prior to termination." Consequently, given that the above provision is discussed in conjunction with the forced purchase option, we find that the lease does contemplate a situation where delinquent lease payments are owed and the lessor [Cleveland Mack Leasing] invokes the forced purchase option.
 {¶ 31} While in this situation, the vehicles were returned to Cleveland Mack Leasing, this does not, despite Chef's Classics insistence to the contrary, extinguish Cleveland Mack Leasing's option under the contract to force Chef's Classics to purchase the vehicles. As the magistrate accurately explained:
 {¶ 32} "The decision to return the vehicles to Plaintiff [Cleveland Mack Leasing], as with the decision to add the Kidron body and Thermo-King refrigeration unit, were elections made by the Defendant [Chef's Classics]. By accepting the return of the vehicles, Plaintiff was in no different position than it would have been had it used legal process to gain possession of the vehicles after Defendant's default. Moreover, if Plaintiff had used legal process to repossess the vehicles, it would have still had the right to exercise the purchase provisions of the Lease, since, as the language cited above indicates, the Plaintiff's rights and remedies under the Lease are cumulative."
 {¶ 33} Furthermore, despite Chef's Classics insistence, the lease provision calling for payment of delinquent payments and forced purchase do not unjustly enrich Cleveland Mack Leasing.
 {¶ 34} "Unjust enrichment is an equitable doctrine to justify a quasi-contractual remedy that operates in the absence of an express contract or a contract implied in fact to prevent a party from retaining money or benefits that in justice and equity belong to another." Turner v. Langenbrunner, 12th Dist. No. CA2003-10-099, 2004-Ohio-2814, ¶ 38, citing University Hospitalsof Cleveland, Inc. v. Lynch, 96 Ohio St.3d 118, 2002-Ohio-3748, ¶ 60. Absent fraud or illegality, a party to an express agreement may not bring a claim for unjust enrichment, particularly when the express agreement contains a provision governing the allegedly inequitable conduct of the other party. Sammarco v.Anthem Ins. Companies, Inc. (1998), 131 Ohio App.3d 544, 557.
 {¶ 35} Accordingly, since in the situation presented, a written contract existed between the parties and there was no allegation of fraud or illegality, the trial court did not err in finding that Chef's Classic's unjust enrichment claim failed. Id.
 {¶ 36} Likewise, this court also finds that the trial court did not commit error by finding that the term allowing for both the forced purchase of the vehicles and payment for delinquent lease payments was not unconscionable.
 {¶ 37} "`An unconscionable contract clause is one in which there is an absence of meaningful choice for the contracting parties, coupled with draconian contract terms unreasonably favorable to the other party.' Eagle [v. Fred Martin Motor Co.,157 Ohio App.3d 150, 2004-Ohio-829,] ¶ 30. In order to support a finding of unconscionability, a party must offer evidence that a contract is both substantively unconscionable, meaning that it contains unfair or unreasonable terms, and procedurally unconscionable, indicating that no voluntary meeting of the minds was possible. Id." Featherstone v. Merrill Lynch, Pierce, Fenner Smith Inc., 159 Ohio App.3d 27, 2004-Ohio-5953, ¶ 13.
 {¶ 38} "When considering substantive unconscionability, a court should determine whether the terms of the contract are commercially unreasonable." Featherstone, 159 Ohio App.3d 27, at ¶ 13, citing Eagle, 157 Ohio App.3d 150, at ¶ 31. Contract clauses that are so one-sided as to oppress or unfairly surprise a party are unconscionable. Neubrander v. Dean Witter Reynolds,Inc. (1992), 81 Ohio App.3d 308, 311-12 (dealing with arbitration clauses). Outrageous contractual terms or a severe imbalance in bargaining power also support a finding of unconscionability. Orlett v. Suburban Propane (1989),54 Ohio App.3d 127, 129.
 {¶ 39} "In determining procedural unconscionability, a court should consider factors concerning the bargaining power of each party, `including age, education, intelligence, business acumen, experience in similar transactions, whether the terms were explained to the weaker party, and who drafted the contract.'Eagle, at ¶ 31." Featherstone, 159 Ohio App.3d 27, at ¶ 13.
 {¶ 40} Chef's Classics cannot establish procedural unconscionability. The bargaining power of the two parties seems to be equal. As the magistrate stated, both parties are business entities. Furthermore, there is no evidence in the record that even suggests that there was a severe imbalance of bargaining power when the contract was entered into. As the magistrate pointed out, Cleveland Mack Leasing is not the only supplier of rental trucks. As such, if Chef's Classics did not like the terms of the agreement, it could have gone elsewhere to rent trucks. Additionally, the contract was not so one sided as to suggest procedural unconscionability. Provisions in the contract were favorable to Chef's Classics. For instance, the contract provided that if Cleveland Mack Leasing breached, Chef's Classics would have the option to purchase the vehicles if it chose.
 {¶ 41} Thus, for all those reasons, Chef's Classics has failed to establish procedural unconscionability. As aforementioned, an unconscionability finding requires both procedural and substantive unconscionability. Since one was not met, there can be no finding of unconscionability. Thus, for all the reasons above, this assignment of error lacks merit.
 {¶ 42} For the foregoing reasons, the judgment of the trial court is hereby affirmed in part, reversed in part and remanded. The trial court appropriately granted summary judgment on Cleveland Mack Leasing's claim for forced purchase and it also appropriately granted summary judgment on the issue of liability as to Chef's Classics owing Cleveland Mack Leasing for delinquent lease payments. However, given that Klein's affidavit and the invoices attached thereto differ as to the amount of damages for the delinquent lease payments, there is an issue that must be resolved. Thus, the case is remanded back to the trial court for further proceedings to determine the sole issue of the appropriate amount of damages for the delinquent lease payments.
Waite, J., concurs.
DeGenaro, J., concurs.