# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## CARROLL COUNTY

GATEWAY ROYALTY, L.L.C.,

Plaintiff-Appellant,

v.

CHESAPEAKE EXPLORATION, ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 CA 0933**

---

Civil Appeal from the
Court of Common Pleas of Carroll County, Ohio
Case No. 2017CVH28970

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Robert Sanders*, 12051 Old Marlboro Pike, Upper Marlboro, Maryland 20772 and *Atty. James Lowe*, Lowe, Eklund & Wakefield Co. LPA, 1660 West Second Street, 610 Skylight Office Tower, Cleveland, Ohio 44113, for Plaintiff-Appellant and

*Atty. Peter Lusenhop, Atty. Timothy McGranor, Atty. Andrew Guran, Atty. Thomas Fusonie, Atty. Mitchell Tobias, Atty. Ilya Batikov,* Vorys, Sater, Seymour and Pease LLP., 52 East Gay Street, P.O. Box 1008, Columbus, Ohio 43216, and

*Atty. William Connolly,* Drinker Biddle & Reath, LLP., One Logan Square, Suite 2000, Philadelphia, Pennsylvania 19103, and

*Atty. Daniel Donovan,* Kirkland & Ellis, LLP., 655 Fifteenth Street, N.W., Washington, DC 20005, for Defendants-Appellees.

April 3, 2020

---

**Donofrio, J.**

{¶1} Plaintiff-appellant, Gateway Royalty, LLC (Gateway), appeals from a Carroll County Common Pleas Court judgment granting summary judgment in favor of defendants-appellees, Chesapeake Exploration, LLC (CELLC), Chesapeake Utica, LLC (CHK Utica), Jamestown Resources, LLC (Jamestown), Pelican Energy, LLC (Pelican), and EnerVest Operating, LLC (EnerVest), on Gateway's claim for breach of contract alleging underpayment of oil and gas royalties.

{¶2} Gateway is a Texas company that owns a royalty interest in six leases at issue in this case. All six leases require that the royalties on gas, including natural gas liquids (NGLs), are to be calculated on the price paid for the products marketed and used off the premises.

{¶3} In five of the leases (the Eric Petroleum Leases), the original lessee was Eric Petroleum, Inc. The current lessees of the Eric Petroleum Lease are CELLC, CHK Utica, Jamestown, and Pelican. The Eric Petroleum Leases provide that the lessee shall pay,

> as royalty for the gas marketed and used off the premises and produced from each well drilled thereon, the sum of one-eighth (1/8) of such gas so marketed and used at the price paid to Lessee * * * less any charges for transportation, compression and/or dehydration to deliver the gas for sale.

(Eric Petroleum Leases).

{¶4}   In the sixth lease (the Great Lakes Lease), the original lessee was Great Lakes Energy Partners, LLC.   Currently, the sole lessee of the Great Lakes Lease is EnerVest.  The Great Lakes Lease provides the identical provision quoted above in the Eric Petroleum Leases except that the last line reads, "less any charges for transportation, dehydration and compression paid by Lessee to deliver the gas for sale."  (Great Lakes Lease).

{¶5}   CELLC produces the gas and sells its share and CHK Utica's share of the gas to Chesapeake Energy Marketing, LLC (CEMLLC) at or near the wellhead. Jamestown and Pelican also entered into marketing agreements with CELLC to market and sell their oil, gas, and NGLs.  CEMLLC then processes the raw product into gas and NGLs and markets these products to third-party buyers downstream.  CEMLLC incurs post-production costs to move the gas downstream for further sale.

{¶6}   Instead of paying royalties on the third-party price, appellees pay royalties on the price paid by the third-party buyers minus the post-production costs incurred by CEMLLC between the well and the sale to the third parties.

{¶7}   On December 28, 2017, Gateway filed a complaint against appellees alleging the underpayment of oil and gas royalties under counts of breach of contract, conversion, and violations of Ohio's Corrupt Practices Act.  Gateway alleged that CELLC, on behalf of all appellees, miscalculated the royalties it paid.  It asserted the only price actually paid for the gas and NGLs is the price paid by third-party buyers.  Therefore, Gateway claimed the royalties must be calculated on the third-party price. On appellees' motion, the trial court dismissed the conversion and Ohio Corrupt Practices counts.

{¶8}   CELLC, CHK Utica, Jamestown, and Pelican (the Chesapeake Defendants) filed a joint motion for summary judgment on the remaining breach of contract claim. EnerVest filed its own motion for summary judgment on that remaining claim.  The trial court granted both motions for summary judgment but for different reasons.

{¶9}   As to the Chesapeake Defendants, the trial court found that while Gateway sought to receive royalty payment based on the downstream sales price paid to CEMLLC, this is not what is specified in the Eric Petroleum Leases.  Instead, the royalty payment is based on the price paid to CELLC at the wellhead.  The court pointed out that per the Eric Petroleum Leases, the contract price is to be reduced by the buyer's actual cost of any

fees incurred in marketing such as taxes and fees for gravity adjustment, transportation, or treating. The court also noted that the reasonably prudent operator's price does not have to be the highest possible price but rather it must be reasonable under the circumstances. It found the Chesapeake Defendants met that burden. Thus, the trial court found that no genuine issues of material fact existed and granted summary judgment in favor of the Chesapeake Defendants.

{¶10} As to EnerVest, the trial court pointed out that the royalty statement provided by Gateway showed no deductions from royalties other than for taxes. Therefore, it found there were no damages from improper deductions. The court pointed out that Gateway relied on the Buck Well Documents, the Henceroth Discovery, and conversations between Bruce Buck and unidentified oil haulers. The court found that the Buck Well Documents related to a different lease. The Henceroth Discovery involved a matter in which EnerVest was not a party and, therefore, could not be used against EnerVest. And the conversations between Bruce Buck and the oil haulers did not concern the Great Lakes Lease. Thus, the trial court found that Gateway relied only on unsupported inferences and presented no evidence to create a genuine issue of material fact. Therefore, the court granted summary judgment in EnerVest's favor.

{¶11} Gateway filed a timely notice of appeal from both judgments on July 29, 2019. It now asserts that summary judgment in favor of appellees was improper.

{¶12} An appellate court reviews a summary judgment ruling de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper.

{¶13} A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. *Mercer v. Halmbacher*, 9th Dist. Summit No. 27799, 2015-Ohio-4167, ¶ 8; Civ.R. 56(C). The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088

(8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

{¶14}   If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts to show that there is a genuine issue of material fact.   *Id.*; Civ.R. 56(E).   "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party."   *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346, 617 N.E.2d 1129 (1993).

{¶15} Gateway raises two assignments of error that it addresses together. Gateway's first assignment of error states:

> THE TRIAL COURT ERRED IN ENTERING SUMMARY JUDGMENT IN FAVOR OF APPELLEES BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER THE GAS AND NATURAL GAS LIQUIDS WERE "MARKETED" AT THE WELL OR ONLY IN SALES TO THIRD-PARTY BUYERS DOWNSTREAM OF THE WELL.

{¶16}   Gateway's second assignment of error states:

> THE TRIAL COURT ERRED IN ENTERING SUMMARY JUDGMENT IN FAVOR OF APPELLEES BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER THE "PRICE PAID" TO APPELLEES FOR THE GAS AND NATURAL GAS LIQUIDS WAS A WELLHEAD PRICE OR THE PRICE PAID BY THIRD-PARTY BUYERS DOWNSTREAM OF THE WELL.

{¶17}   The leases provide that the royalties on gas and NGLs shall be 1/8 of the price "paid" to the lessee for all gas and NGLs "marketed and used off the premises." Gateway argues that, by definition, the marketing must occur off of the leased premises. It asserts that two documents produced by CELLC establish that the only gas marketed is the gas marketed to the third-party buyers.

{¶18}   First, Gateway points to a document called the "Transaction Confirmation." (Opposition to Summary Judgment Ex. 2).  The Transaction Confirmation provides that

Case No. 19 CA 0933

CELLC will sell to CEMLLC the gas and NGLs and the "marketing obligations for royalty owners." Thus, Gateway argues, CELLC cannot perform marketing for royalty owners because CELLC sold that right to CEMLLC.

**{¶19}** Second, Gateway points to the Development Agreement between CELLC and CHK Utica. (Opposition to Summary Judgment Ex. 1). The Development Agreement provides: "Chesapeake Exploration will arrange for Affiliated or non-Affiliated Persons to provide, on a Reasonably Prudent Operator Standard, *all marketing* and Other Services helpful or necessary for the sale, at market prices, of Utica's Hydrocarbon production." (Emphasis added). Gateway argues that CELLC clearly does not perform any marketing because per the Development Agreement, it is required to arrange for other entities (in this case CEMLLC) to perform "all" marketing.

**{¶20}** Next, Gateway points out that the leases provide that the royalties shall be 1/8 of the price "paid to Lessee." Because it asserts the only price paid to lessee is the price paid by the third-party buyers, Gateway argues this is the amount from which royalties must be calculated.

**{¶21}** Gateway continues by arguing that the trial court incorrectly ruled that CELLC marketed and sold the gas and NGL's to CEMLLC. Therefore, it contends, the trial court erroneously ruled that CELLC took no cost deductions from the royalties. Gateway argues instead that the only actual sale and payment was the sale to the third-party buyers. Consequently, it asserts the third-party price is the price that must be used for royalty purposes, without any deductions.

**{¶22}** Gateway goes on to argue that no costs can be deducted from the price paid by the third-party buyers for two reasons. First, the costs were not incurred by appellees but by CEMLLC. And second, the costs were incurred after CELLC transferred title to CEMLLC at the well. Thus, all of the post-production costs were incurred by CEMLLC downstream of the well. Therefore, Gateway concludes, none of the post-productions costs can be deductible from the amounts paid by the third-party buyers when calculating royalties.

**{¶23}** The court's role in reviewing a contract is to determine the parties' intent and give effect to it. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St. 3d 270, 273, 714 N.E.2d 898 (1999). "A contract is defined by the words written within the four

corners of the document." *Cleveland Mack Leasing, Ltd. v. Chef's Classics, Inc.*, 7th Dist. Mahoning No. 05 MA 59, 2006-Ohio-888, ¶ 19.  When contract language is clear and unambiguous, and not subject to multiple interpretations, a court will not consider extrinsic evidence to interpret the contract's terms.  *Love v. Beck Energy Corp.*, 7th Dist. Noble No. 14 NO 415, 2015-Ohio-1283, ¶ 21, citing *Shifrin v. Forest City Enterprises, Inc.*, 64 Ohio St.3d 635, 597 N.E.2d 499 (1992), syllabus.

{¶24}  Thus, if the Leases are clear and unambiguous, we may not consider the extrinsic evidence Gateway urges us to consider.

{¶25}  The Eric Petroleum Leases provide that CELLC will pay royalties, "for the gas marketed and used off the premises and produced from each well" in the amount of one-eighth of "such gas so marketed and used at the price paid to Lessee * * * less any charges for transportation, compression and/or dehydration to deliver the gas for sale." This language appears clear and unambiguous.

{¶26}  According to Merriam-Webster's online dictionary, to "market" is "to expose for sale in a market" or to "sell."   https://www.merriam-webster.com/dictionary/market. Thus, when CELLC sold the gas and NGLs to CEMLLC, it "marketed" the product. Because there is no ambiguity, we will not consider the extrinsic documents that Gateway relies on.

{¶27}  The price CEMLLC pays to CELLC is calculated in the following way:  (1) CELLC produces and markets the gas and NGLs by bringing the hydrocarbons to the surface; (2) CELLC sells its working interest share, along with CHK Utica's, Jamestown's, and Pelican's working interest shares, to CEMLLC at or near the wellhead; (3) CEMLLC calculates the "netback" price by taking the proceeds it receives from third-party buyers downstream and deducting the transportation, compression, gathering, and other post-production costs it incurs; and (4) CEMLLC pays the Chesapeake defendants the "netback" price for the gas and NGLs produced and sold at the wellhead.  (Chesapeake Defendants' Motion for Summary Judgment Ex. A, Gipson Aff. ¶ 3; Ex. B, Bowles Aff. ¶ 4, 7, 11).  The Chesapeake defendants then pay Gateway royalties based on this netback price.

{¶28}   In a similar case, the United States District Court, Northern District of Ohio, Eastern Division, approved this method.  The court granted summary judgment in favor

Case No. 19 CA 0933

of CELLC on a class action suit brought by royalty owners for breach of contract arising from CELLC's alleged underpayment of oil and gas royalties asserting CELLC paid the royalties on the wrong price. *Henceroth v. Chesapeake Expl., L.L.C.*, N.D.Ohio No. 4:15CV2591, 2019 WL 4750661 (Sept. 30, 2019). The leases at issue provided CELLC would pay royalties "in an amount equal to one-eighth of the net proceeds realized by Lessee from the sale of all gas and the constituents thereof produced and marketed from the Leasehold." *Id.* at * 1.

**{¶29}** The court found:

Defendant's motion presents the issue of whether CELLC paid royalties consistent with the Class Leases. The Court concludes that it did. Defendant paid "one-eighth of the net proceeds realized." The lease language is plain and unambiguous and the evidentiary record is clear: CELLC (the Lessee) paid Plaintiffs 1/8th of the proceeds it received from the sale of the oil and gas produced and marketed from the leaseholds. * * * CELLC sells the oil and gas at the wellhead to CEMLLC * * * receives a netback price from CEMLLC for those sales, and paid Plaintiffs 1/8th of those proceeds, without taking any deductions from the proceeds realized from CEMLLC. That is exactly what the parties negotiated for in section 5(B) of the Class Leases.

*Id.* at *7. Thus, the court concluded that the language "one-eighth of the net proceeds realized by Lessee from the sale of all gas and the constituents thereof produced and marketed from the Leasehold" was clear and unambiguous. And that the netback price was the proper price from which to calculate the one-eighth royalty payment.

**{¶30}** The same federal district court also confirmed an arbitrator's award in favor of CELLC, CK Utica, and CEMLLC on the almost identical lease issue. In *Hale v. Chesapeake Expl., L.L.C.*, N.D.Ohio No. 4:18CV2217, 2019 WL 1863670 (Apr. 25, 2019), reconsideration denied, N.D.Ohio No. 4:18CV2217, 2019 WL 5420147, the royalty owners pursued claims against CELLC, CK Utica, and CEMLLC asserting breach of contract. Per the terms of their lease, the royalty owners were to receive royalties calculated as a percentage of the proceeds attributable to the production from each well.

*Id.* at * 1. The royalty owners alleged they should have received royalties on the revenue figure of the sale from CEMLLC to downstream purchasers, rather than on the revenue figure of the sale from CELLC to CEMLLC. *Id.* They further argued that CELLC does not perform any marketing, instead CEMLLC does. *Id.* at * 2. They argued that CELLC's obligation to "market" the oil and gas does not occur until CEMLLC sells the product to third-party buyers downstream. *Id.*

**{¶31}** The arbitration panel unanimously decided against the royalty owners and in favor of the Chesapeake parties. *Id.* The panel found the royalty owners provided no evidence that CEMLLC paid a price to CELLC that was "less than that which would be received from a sale to an unaffiliated third party in an arm's length transaction considering the volume available quality, location, and length of term of the proposed sale." *Id.* It further found CELLC transfers title and receives total consideration from CEMLLC for the oil and gas produced from the leases, CELLC markets the oil and gas produced from the leases, and CELLC and its affiliates make legally sufficient accounting entries on their books and records to evidence transfer of title and consideration paid. *Id.*

**{¶32}** The district court observed that the arbitration panel also found that CELLC "marketed" the oil and gas when it sold the oil and gas to CEMLLC. *Id.* at * 4. The court confirmed the panel's award finding that the panel stayed well within its powers to adjudicate the dispute and executed those powers appropriately. *Id.*

**{¶33}** Given all of the above, the Leases are clear and unambiguous and the Chesapeake defendants properly calculated the royalty payments based on the Leases' terms. Accordingly, the trial court properly granted summary judgment in their favor.

**{¶34}** EnerVest raises a different argument than the Chesapeake defendants. EnerVest argues that Gateway has not identified any evidence to support its claim that EnerVest breached the Great Lakes Lease. Nor has Gateway identified any damages. EnerVest points out that in its complaint, Gateway made the same allegations against all defendants regarding each of the Leases and calculations of royalties. In its interrogatory answers, Gateway identified the evidence it stated support its allegations of breach: (1) the "Buck Well Documents;" (2) the "Henceroth Discovery;" and (3) conversations between non-party Bruce Buck and unidentified oil haulers. EnerVest argues none of this evidence applies to it or the Great Lakes Lease.

Case No. 19 CA 0933

{¶35} EnerVest argues that the Buck Well Documents have no bearing on the Great Lakes Lease because they relate to a different lease to which it is not a party. It contends the Henceroth Discovery is likewise unrelated to the Great Lakes Lease. Additionally, EnerVest argues, it contains hearsay. Finally, it points out that Bruce Buck has no connection with the Great Lakes Lease. EnerVest argues Gateway has only offered inferences against it. It asserts Gateway wishes the court to infer that the alleged breach of the Eric Petroleum Leases results in a finding that EnerVest breached the Great Lakes Lease.

{¶36} Finally, EnerVest argues the evidence is uncontroverted that Gateway has no evidence of damages resulting from the Great Lakes Lease. It points to Gateway's royalty statements for production from the wells in drilling units subject to the Great Lakes Lease. (EnerVest Motion for Summary Judgment, Ex. A). It notes that under the heading "DEDUCT," all entries read "0.0," indicating that no deductions were taken.

{¶37} The trial court relied on these reasons in granting summary judgment to EnerVest. In its appellate brief, Gateway did not address these arguments. In its reply brief, however, Gateway argued that the record is clear that CELLC functions as the "operator" under both the Eric Petroleum Leases and the Great Lakes Lease. As such, CELLC has the responsibility for selling the gas and paying the royalties. Gateway argues that EnerVest, as the gas producer, cannot arrange for its agent, CELLC, to calculate and pay royalties and then avoid liability if the agent underpays the royalties.

{¶38} CELLC is the operator of the Great Lakes Lease. (EnerVest Motion for Summary Judgment Exs. A-1, A-2, A-3). EnerVest admitted in its motion for summary judgment that it is not the operator of any of the wells drilled pursuant to the Great Lakes Lease, does not calculate or pay royalties to Gateway, does not market any products from the wells, and had not negotiated any contracts for the sale of production from the wells. (EnerVest Motion for Summary Judgment p. 3, Ex. B).

{¶39} Based on the analysis above, summary judgment was proper finding that CELLC did not breach the Eric Petroleum Leases in calculating royalty payments to Gateway. Therefore, whether EnerVest should be held to be responsible for the royalty payment calculated by CELLC, as Gateway alleges, or whether CELLC should be the responsible party on the Great Lakes Lease, as EnerVest alleges, is immaterial here.

Because the trial court properly found that CELLC calculated and paid royalties in accordance with the Leases, under either scenario summary judgment in favor of EnerVest was proper.

**{¶40}** Accordingly, Gateway's first and second assignments of error are without merit and are overruled.

**{¶41}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, P. J., concurs.

D'Apolito, J., concurs.

Case No. 19 CA 0933

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Carroll County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**